# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GREGORY M. FOSTER,**

    **Plaintiff,**

**v.**                                                                           Case No:   6:19-cv-1426-Orl-LRH

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OF DECISION[1]

Gregory M. Foster ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income payments ("SSI"). Doc. No. 1. Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed and remanded for further administrative proceedings. Doc. No. 22, at 18, 36, 40. The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed. *Id.* at 40. For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

**I.   PROCEDURAL HISTORY.**

On January 30, 2015, Claimant filed applications for DIB and SSI benefits, alleging a disability onset date of January 10, 2015. R. 277, 279. Claimant's applications were denied initially and on reconsideration, and he requested a hearing before an ALJ. R. 172, 176, 185, 191,

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. Nos. 16, 20–21.

197–99. An ALJ held hearings on Claimant's applications in October 2017 and June 2018, at which Claimant was represented by an attorney. R. 76–96, 97–121. Claimant and a vocational expert ("VE") testified at the hearings. *Id.*

After the hearings, the ALJ issued an unfavorable decision finding that Claimant was not disabled. R. 33–45. Claimant sought review of the ALJ's decision by the Appeals Council. R. 274-76. On June 17, 2019, the Appeals Council denied the request for review. R. 1–6. Claimant now seeks review of the final decision of the Commissioner by this Court. Doc. No. 1.

## II.  THE ALJ'S DECISION.[2]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). R. 33–45.[3] The ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2017. R. 35. The ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of January 10, 2015. *Id.* The ALJ found that Claimant suffered from the following severe impairments: cerebral vascular accident, vascular disease, right eye cataract and vision loss, and depression. *Id.* The ALJ concluded that Claimant did not have an impairment

---

[2] Upon a review of the record, I find that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum. Doc. No. 22. Accordingly, I adopt those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 36.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[4] except:

> The claimant is able to lift and carry a maximum of 10 pounds. He can stand and walk for 6 hours of an 8 hour day and sit for 6 hours of an 8 hour day. He can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl and can never climb ladders, ropes, and scaffolds. The [claimant] is limited in right eye vision such that he must avoid any exposure to unprotected heights, moving machinery, and is unable to operate a motor vehicle. He would be unable to avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, or approaching people and vehicles. The claimant must never expose himself to extreme cold/heat and can only expose himself to humidity/wetness, dust, odors, fumes, gases, and vibrations. The [claimant] is also limited to jobs involving simple and repetitive tasks.

R. 38.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work as a corrections officer, probation officer, or sales clerk. R. 43. However, considering Claimant's age, education, work experience, and RFC, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations including food and beverage clerk; telephone information clerk; or ticket taker. R. 43–44. Accordingly, the ALJ

---

[4] The social security regulations define light work to include:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

concluded that Claimant was not disabled from the alleged disability onset date through the date of the decision.   R. 44.

### III.     THE APPEALS COUNCIL'S DECISION.

On June 17, 2019, the Appeals Council denied Claimant's request for review, finding no reason to review the ALJ's decision.   R. 1.   In denying review, the Appeals Council noted, in pertinent part, as follows:

> You submitted medical records from Brevard Health Alliance dated May 23, 2017 (1 page), and John Backes, O.D. dated June 2, 2017 through October 17, 2017 (7 pages).   This evidence is not new because it is a copy of Exhibit(s) 13F and 15F.  We did not exhibit this evidence.
>
> You submitted medical records from Robert Brennan, M.D. dated September 19, 2018 through September 21, 2018 (11 pages); and a medical source statement from Robert Brennan, M.D. dated September 21, 2018 (2 pages).   The Administrative Law Judge decided your case through July 18, 2018.   This additional evidence does not relate to the period at issue.   Therefore, it does not affect the decision about whether you were disabled beginning on or before July 18, 2018.
>
> If you want us to consider whether you were disabled after July 18, 2018, you need to apply again. . . . .

R. 2.

### IV.     STANDARD OF REVIEW.

Because Claimant has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125

F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**V.     ANALYSIS.**

In the Joint Memorandum, which I have reviewed, Claimant raises two assignments of error: (1) the ALJ erred in his consideration of the medical opinions of record; and (2) the Appeals Council improperly declined review after Claimant submitted additional evidence.   Doc. No. 22. Accordingly, these are the only issues that I address.

A.     <u>Medical Opinions</u>.

In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must consider a number of factors when weighing medical opinions, including: (1) whether the physician examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. *Id.* § 404.1527(c). "These factors apply to both examining and non-examining physicians." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th

Cir. 2017) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).[5]

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *See* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179 (citing *Phillips*, 357 F.3d at 1241).

The opinion of a non-examining physician is generally entitled to little weight and, "taken alone, do[es] not constitute substantial evidence." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). The ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician).

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the assigned weight prohibits the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id.*

Here, Claimant argues that the ALJ erred in his consideration of the opinions of three medical professionals: (1) consulting physician Craig Nielson, M.D.; (2) treating physician

---

[5] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

- 6 -

Theodore Schuck, D.O.[6]; and (3) consulting psychologist Scott Kaplan, Psy.D.  Doc. No. 22, at 19–27.  The opinions of each medical professional will be addressed in turn.

      *1.     Dr. Nielson.*

In the decision, the ALJ noted as follows regarding the opinions of Dr. Nielson:

> At the request of the undersigned, the claimant underwent a consultative examination performed by Dr. R. Craig Nielson on December 19, 2017, which revealed few clinical deficits.  He complained of high blood pressure, being blind on the right side, pain throughout the body, and diabetes.  He reported his history of stroke and alleged he had been unable to undergo rehabilitation because his Medicaid had stopped.  However, the records of Brevard Health Alliance he was advised shortly after the stroke, that he was Medicaid eligible.  (Ex. lF/13)  He reported he lives alone in his parent's home.  He indicated he has a driver's license and car, but that he does not drive because of medication.  Dr. Nielson noted the claimant was wearing glasses and his lateral vision was full to the left, but reduced to about 20 degrees on the right.  He appeared to be in no distress and spoke clearly and normally and was cooperative.  He did not appear to be sedated at all. (Ex. l6F).
>
> He had a normal gait and station and did not use an assistive device.  He walked well on the heels and toes.  There was no evidence of balance problems.  The lungs were clear and heart rate was regular and rhythmic.  He had a full range of motion of the spine with no spasms.  He had full range of all joints and with no swelling or deformity.  There was no edema of the extremities and pedal pulses were present.  Sensation and motor were normal and deep tendon reflexes were intact.  There was no atrophy of the extremities.  Hand grasp was full at 5/5 and fine and dexterous movements were normal.  A straight leg raise was negative.  He had no difficulty getting in and out of a chair and off and on the examining table.  (Ex. 16F).
>
> Dr. Nielson completed a medical source statement and indicated the [claimant] would be able to lift and carry up to 10 pounds, stand and walk for 4 hours each of an 8 hour day and sit for 6 hours of an 8 hour day.  He could occasionally perform all postural maneuver and occasionally climb ramps and stairs, ladders or scaffolders and balance.  He should avoid unprotected heights, and extreme cold and heat.  (Ex. 16F).

R. 41.

The ALJ accorded Dr. Nielson's opinions partial weight for the following reasons:

---

[6] Although the parties refer in the joint memorandum to "Dr. Schack," it appears from the record that Claimant's treating physician's name is "Dr. Schuck."  *See, e.g.*, R. 586, 591–94, 660–61, 666–68.  Accordingly, the Court refers to Claimant's treating physician as "Dr. Schuck."

> Partial weight is given to the consultative examiner's opinion (Ex. 16F) because it is based on a one-time evaluation for non-treatment purposes, and it is not entirely consistent with the other substantial evidence of record (e.g., Ex. 6A and 8A). Moreover, I give the C.E.s opinion partial weight because it is internally inconsistent with itself (e.g., both the postural and manipulative limitations are inconsistent with the C.E.s own physical examination findings which show normal range of motion, gait, and no sensory, motor, or reflex loss in the extremities (Ex. 16F page 5, 12, 13, and 14).

R. 42.

Claimant argues that although the ALJ stated that Dr. Nielson's findings supported the RFC determination in part, "there are several key medical findings of Dr. Nielson that conflict with the RFC," such as Dr. Nielson's opinions that: (1) Claimant could only stand/walk for 4 hours in an 8-hour workday; that (2) Claimant could only occasionally lift and carry objects weighing 10 pounds; and that (3) Claimant could never stoop. *Id.* Claimant also argues that the ALJ erred in giving more weight to the opinions of Ronald Kline, M.D., a non-examining state agency physician, and discounting Dr. Nielson's opinion because it was based on a one-time evaluation. Doc. No. 22, at 19. Moreover, according to Claimant, Dr. Kline's opinions cannot form the basis to afford less weight to Dr. Nielson's opinions because Dr. Kline did not have opinion evidence from any medical source on which to base his opinion and did not review Dr. Nielson's notes. *Id.* at 20–21. Finally, Claimant argues that the ALJ erred in finding that Dr. Nielson's opinions were internally inconsistent because the limitations assigned by Dr. Nielson were actually consistent with his examination findings. *Id.* at 21.

On review, I find no error in the ALJ according only partial weight to Dr. Nielson's opinions. First, as the Commissioner argues, as a one-time examiner, Dr. Nielson's opinions were not entitled to any particular deference. *See Vanderhorst v. Comm'r of Soc. Sec.*, No. 6:13-cv-204-Orl-18DAB, 2013 WL 6056445, at *4 (M.D. Fla. Nov. 14, 2013) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)); *see also Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)

("The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight.").

Second, the ALJ observed that Dr. Nielson's opinions were not entirely consistent with the other medical opinions of record, in particular the opinions of consultative examiner Dr. Kline. R. 42 (citing Exhibits 6A & 8A). A review of those records supports that finding, thus providing good cause for giving the opinions of Dr. Nielson only partial weight. *See, e.g.*, *Machuat v. Acting Comm'r of Soc. Sec.*, 773 F. App'x 490, 493 (11th Cir. 2019) (finding substantial evidence supported ALJ's decision to give little weight to opinion of one-time examiner where opinion was contradicted by other medical opinions of record based on objective and clinical evidence, including records from treating neurologist and consultative examiner).[7]

Third, the ALJ found Dr. Nielson's opinions internally inconsistent, in that "both the postural and manipulative limitations" were inconsistent with Dr. Nielson's findings on examination demonstrating "normal range of motion, gait, and no sensory, motor, or reflex loss in the extremities." R. 42. On review of the record, this finding is supported by substantial evidence. For example, Dr. Nielson's examination revealed normal gait and station; normal range of motion; that Claimant could walk heel-to-toe well, could squat and un-squat, and did not require an assistive device; and Claimant had negative straight leg raise testing. *See* 771, 778–80. These findings are reasonably viewed as inconsistent with Dr. Nielson's opined postural limitations. *See* R. 773 (opining that Claimant could only sit 6 hours; stand 4 hours; and walk 4 hours in an 8-hour workday,

---

[7] I note that "[a]lthough the opinion of an examining physician is ordinarily entitled to greater weight than the opinion of a non-examining physician, the administrative law judge [is] free to reject the opinions of . . . examining physicians [if] they were not supported by the record." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 833 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). In addition, I note that although Claimant argues that the ALJ gave "more weight" to the opinions of Dr. Kline than the opinions of Dr. Nielson, the ALJ actually gave only "partial weight" to both medical professionals. *See* R. 42.

without identifying any particular medical or clinical findings in support). In addition, on examination, Dr. Nielson observed that Claimant had no clubbing, cyanosis, edema, or varicosities in his extremities; full bilateral hand grasp; normal fine and dexterous movements of the fingers; a full range of all joints, with no swelling or deformity; normal sensation and motor examinations; and no atrophy of the extremities. *See* R. 771. It was reasonable for the ALJ to conclude that such evidence is inconsistent with Dr. Nielson's opined manipulative limitations. *See* R. 774 (opining that Claimant could only occasionally reach, handle, finger, feel, push/pull with both right and left hand, identifying no medical findings in support). Therefore, because the finding that Dr. Nielson's opinions are inconsistent with his medical records is supported by substantial evidence, the ALJ stated good cause to accord his opinions only partial weight. *See Phillips*, 357 F.3d at 1240–41 (good cause exists to reject medical opinion where it is inconsistent with the physician's medical records).

Taken together, the Court finds that the ALJ provided sufficient reasons, which are supported by substantial evidence, to assign Dr. Nielson's opinions in the medical source statement only partial weight. Accordingly, I find no error as it relates to the ALJ's consideration of the opinions of Dr. Nielson.

    2. *Dr. Schuck.*

Claimant next argues that the ALJ erred in failing to account for the January 26, 2017 opinion of Dr. Schuck, Claimant's treating physician. Doc. No. 22, at 21–22.

The record reflects that Dr. Schuck has been treating Claimant since at least 2015. *E.g.*, R. 555. On January 26, 2017, Dr. Schuck completed a form in which he opined that Claimant has a "medically determinable physical or mental impairment that . . . prevents [Claimant] from engaging in any substantial gainful activity," which condition could be expected to last for a continuous period

of not less than sixty (60) months. R. 595. Dr. Schuck's diagnoses included cerebralvascular accident, obstructive sleep apnea, uncontrolled hypertension, and vascular disease. *Id.* Dr. Schuck appears to opine that Claimant has limitations in sitting, standing, walking, lifting, and activities of daily living due to "dyspnea upon mild exertion, visual field impairments & daytime somnolence." *Id.* Dr. Schuck does not specify, however, any specific limitations—time, weight, or otherwise—on Claimant's ability to sit, stand, walk, lift or participate in activities of daily living. *See id.*

> In the decision, the ALJ gave "little weight" to Dr. Schuck's opinions as follows:
>
> Little weight is given to the claimant's own medical source's opinion (Ex. 9F) the claimant is unable to engage in substantial gainful activity because it is a decision that is left to the Commissioner of Social Security to decide.   It is also not explained nor supported by medically acceptable clinical and laboratory diagnostic techniques. It is inconsistent with the objective and other substantial evidence of record (e.g., Exs. 6A, 8A, and 3F).

R. 42.

Claimant argues that the ALJ fails to discuss the specific limitations imposed by Dr. Schuck, including the limitations on sitting/standing/walking due to dyspnea on mild exertion, visual field impairments, and daytime somnolence. Doc. No. 22, at 22–23. Claimant also argues that the ALJ's finding that Dr. Schuck's opinion was "not explained nor supported by medically acceptable clinical and laboratory techniques" is conclusory and not supported by the record. *Id.* at 24. Claimant further disputes the ALJ's conclusion that Dr. Schuck's opinions were inconsistent with the other opinion evidence of record (Exhibits 6A, 8A, 3F). *Id.* Finally, Claimant argues that the ALJ erred in giving more weight to the opinions of non-examining state agency consultants over the opinions of Dr. Schuck, who is a treating physician. *Id.* at 25–26.

On review, Claimant has not established reversible error in the ALJ's consideration of Dr. Schuck's opinions. As an initial matter, Claimant suggests that the ALJ erred in failing to weigh

- 11 -

Dr. Schuck's opinion that Claimant has limitations in sitting, standing, walking, lifting, and activities of daily living due to "dyspnea upon mild exertion, visual field impairments & daytime somnolence."  R. 595.  However, while dyspnea, visual impairments, and somnolence may be symptoms of Claimant's impairments, nothing in this portion of Dr. Schuck's opinion provides specific limitations as it relates to Claimant's residual functional capacity.  *See* R. 595.  Therefore, even assuming the ALJ erred in failing to weigh this portion of Dr. Schuck's opinion, any error was harmless because Claimant has not demonstrated that it "contain[s] any specific functional limitations that are more restrictive than the ALJ's RFC determination."  *See D'Orazio v. Comm'r of Soc. Sec.*, No. 6:16-cv-604-Orl-37DCI, 2017 WL 2122960, at *4 (M.D. Fla. Apr. 24, 2017), *report and recommendation adopted*, 2017 WL 2103465 (M.D. Fla. May 15, 2017) (citing *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008)); *Sarnelle v. Comm'r of Soc. Sec.*, No. 6:15-cv-1644-Orl-41DCI, 2016 WL 7238918, at *4 (M.D. Fla. Nov. 8, 2016), *report and recommendation adopted*, 2016 WL 7230929 (M.D. Fla. Dec. 14, 2016).  Moreover, Claimant does not cite any evidence, including from Dr. Schuck, demonstrating that the limitations included in the ALJ's RFC assessment do not sufficiently account for Dr. Schuck's opinions or that Dr. Schuck's opinions warrant greater functional limitations.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

In addition, as it relates to Dr. Schuck's opinion that Claimant has a medically determinable impairment that prevents Claimant from engaging in any substantial gainful activity, Claimant

properly concedes that portion of Dr. Schuck's opinion was not entitled to deference because whether Claimant was able to engage in substantial gainful activity under the Social Security Regulations is a decision reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."); *see also Hernandez v. Soc. Sec. Admin., Comm'r*, 761 F. App'x 901, 903–04 (11th Cir. 2019) ("[T]he ALJ correctly concluded that he was not required to consider Dr. Johnston's opinion that Hernandez's conditions prevented her from being able to work, as regulations reserve that decision to the Commissioner." (citing 20 C.F.R. § 404.1527(d)(1))). Accordingly, the ALJ did not err in declining to afford that portion of Dr. Schuck's opinion any weight. *See also* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

I also find no error in the ALJ's determination that Dr. Schuck's opinions were essentially conclusory. *See* R. 42 (stating that Dr. Schuck had not explained or supported his opinions "by medically acceptable clinical and laboratory diagnostic techniques"). The form completed by Dr. Schuck is devoid of any attachment of or citation to any supporting documentation to support his opinions. *See* R. 595. *See generally Crawford*, 363 F.3d at 1159 (the opinion of a treating physician "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory").

Finally, Claimant is correct that as a general rule, the opinion of a non-examining physician does not provide the requisite good cause to reject the opinion of a treating physician. *See Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). However, the ALJ does not err in crediting the opinions of non-treating sources over

those of treating sources when the ALJ properly explains the weight given to the various medical opinions and clearly articulates his or her reasoning. *See Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902–03 (11th Cir. 2012). In this regard, Claimant argues that the ALJ erred in finding that Dr. Schuck's opinions were inconsistent with the opinions of Dr. Kline and Dr. Kaplan. Doc. No. 22, at 25–26.[8] Regardless, reliance of the opinions of these consultative physicians was not the only reason that the ALJ discounted Dr. Schuck's opinions, and as discussed above, besides Claimant's inability to engage in any substantial gainful activity, Dr. Schuck does not opine to any other specific limitations. *Id.* Accordingly, I find no error in the ALJ's citation to the opinions of the non-examining physicians in discounting the opinions of Dr. Schuck. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (rejecting the claimant's argument "that the ALJ erred in failing to accord appropriate weight to the opinion of her treating physician . . . because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it.").

For these reasons, Claimant has not demonstrated that the ALJ erred in giving little weight to Dr. Schuck's opinions.

### 3. Dr. Kaplan.

In the decision, the ALJ noted as follows as it related to Dr. Kaplan's consultative psychological evaluation:

> The claimant underwent a consultative psychiatric evaluation performed by Dr. Scott M. Kaplan on June 25, 2015. He reported he lives alone in a house. He has friends and family he sees regularly. He reported he is depressed over his financial situation and his prior divorce, but denied ever being placed on psychotropic medications. A mental status revealed he was fully oriented to person, place, time, and situation. He was cooperative and dressed appropriately. Speech was clear and logical with no evidence of circumstantiality or pressured speech. Mood and affect were depressed.

---

[8] The Court agrees with Claimant that the ALJ's citation to Dr. Kaplan's opinion may have been in error (Dr. Kaplan provided opinions as a consultative psychologist). However, I find any such error harmless on the facts of this case. *See Kemp v. Astrue*, 308 F. App'x 423, 425 (11th Cir. 2009).

> He alleged feelings of anhedonia, hopelessness, helplessness, and reduced energy. Yet, his thought processes were logical and organized. Concentration and memory function were variable. There was no evidence of delusions or hallucinations. He denied suicidal ideation. Final diagnosis was of a depressive disorder with Dr. Kaplan adding the claimant would likely experience mild impairment in understanding simple routine tasks and moderate limitation in understanding complex tasks, adapting and getting along in social settings. (Ex. 3F).

R. 36–37; *see* R. 411–13 (Exhibit 3F).

The ALJ gave little weight to Dr. Kaplan's opinions:

> Little weight is given to the consultative psychologist (Ex. 3F) who stated the claimant would have a mild limitation in understanding one and two-step instructions. It is internally inconsistent with his own findings and is based upon a one-time examination during which the claimant denied any current medications. It is also inconsistent with the findings of the claimant's treating sources [that] he displayed a normal mood and affect, with no evidence of anxiety or depression and normal concentration and attention. (Ex. 2F, 5F, 8F, 14F, 18F)

R. 42.

Claimant acknowledges that at step three of the sequential evaluation process, the ALJ found that Claimant had moderate limitations in concentration, persistence, or pace, but argues that the RFC "fails to address any mental limitations." Doc. No. 22, at 26. And although the ALJ explicitly addressed Dr. Kaplan's opinion regarding Claimant's ability to understand one and two-step instructions, Claimant argues that the ALJ failed to discuss or assign any weight to Dr. Kaplan's opinion that Claimant had moderate impairments in adapting and getting along in social settings. *Id.*

On review, Claimant has not established reversible error as it relates to the ALJ's consideration of Dr. Kaplan's opinions. First, as correctly noted by the ALJ, and as discussed above as it relates to Dr. Nielson, because Dr. Kaplan was not a treating psychologist, his opinions were not entitled to any particular deference. *Cf. Vanderhorst*, 2013 WL 6056445, at *4 (M.D. Fla.

Nov. 14, 2013) (citing *McSwain*, 814 F.2d at 619; *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d at 1160).

Second, I also find that the ALJ stated good cause to give Dr. Kaplan's opinions little weight. In particular, the ALJ found that Dr. Kaplan's opinions were inconsistent with the findings of Claimant's treating sources that he displayed a normal mood and affect, with no evidence of anxiety or depression and normal concentration and attention. R. 42 (citing Exhibits 2F, 5F, 8F, 14F, 18F). A review of the records cited by the ALJ support that finding. *See, e.g.*, R. 417, 549, 555, 559, 563, 687, 889 (finding Claimant alert, cooperative, with normal mood and affect, normal attention and concentration).[9]

Third, insofar as Claimant alleges that the ALJ failed to explicitly address Dr. Kaplan's opinion that Claimant has moderate limitation in adapting and getting along in social settings, I find that any error by the ALJ was, at most, harmless. The decision reflects that at step three of the sequential evaluation process, after reviewing Dr. Kaplan's opinion, the ALJ found that Claimant only had a mild limitation in interacting with others, and the ALJ found that there was "no evidence of mental health treatment throughout the alleged period of disability to indicate his ability to interact with others would be greater than mild." R. 37. The ALJ also found that Claimant only had a mild limitation in adapting. *Id.* Moreover, the decision reflects that the ALJ gave great weight to the opinions of the state agency psychological consultant, Dr. Bevlyn Sagon, who

---

[9] While it is unclear from the ALJ's decision what portion of Dr. Kaplan's opinion the ALJ found internally inconsistent, albeit with reference to the consultative examination during which the claimant denied any current medications, I find that any error in this regard was at most, harmless, because the ALJ otherwise stated good cause for giving Dr. Kaplan's opinions little weight. *See D'Andrea*, 389 F. App'x at 948 (rejecting the claimant's argument "that the ALJ erred in failing to accord appropriate weight to the opinion of her treating physician . . . because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it."); *see also Blakely v. Comm'r of Soc. Sec.*, No. 6:16-cv-987-Orl-37GJK, 2017 WL 1102766, at *3 (M.D. Fla. Mar. 7, 2017), *report and recommendation adopted*, 2017 WL 1093541 (M.D. Fla. Mar. 23, 2017).

determined that Claimant has no limitations in social interaction, and that Claimant has the capacity to adapt adequately in the work environment. *See* R. 155. Claimant does not challenge the weight afforded to Dr. Sagon's opinion, which is in clear conflict with Dr. Kaplan's opinion that Claimant has moderate limitations in adapting and getting along in social settings.

Finally, Claimant's argument that the ALJ failed "to address any mental limitations" is unavailing. Claimant cites authority for the proposition that the ALJ's RFC determination must adequately reflect Claimant's mental impairments. Doc. No. 22, at 26–27. *See Brunson v. Astrue,* 850 F. Supp. 2d 1293 (M.D. Fla. 2011); *Millhouse v. Astrue*, No. 8:08-cv-378-T-TGW, 2009 WL 763740 (M.D. Fla. Mar. 23, 2009). As the Commissioner argues, however, in the RFC determination, the ALJ limited Claimant "to jobs involving simple and repetitive tasks." R. 38. This limitation sufficiently accounts for the ALJ's finding that Claimant is moderately limited in concentration, persistence, or pace. *See, e.g.*, *Kayser v. Comm'r of Soc. Sec.*, No. 2:15-cv-566-FtM-CM, 2016 WL 6596013, at *9 (M.D. Fla. Nov. 8, 2016) (finding no error in RFC determination when "the medical evidence demonstrates that the ALJ's restriction to simple, repetitive, routine tasks or unskilled work sufficiently accounts for Plaintiff's limitations on concentration, persistence and pace.").

For these reasons, I find that Claimant has failed to establish reversible error as it relates to the ALJ's consideration of Dr. Kaplan's opinions.

B.  Appeals Council.

In his second assignment of error, Claimant argues that the Appeals Council erred in its consideration of new evidence. Doc. No. 22, at 36. Specifically, Claimant argues that he submitted a medical source statement from Robert Brennan, M.D. in support of his claim, and the Appeals Council erred in finding that such evidence did not "relate to the period at issue," and

therefore did not "affect the decision about whether [he was] disabled beginning on or before July 18, 2018." *Id.* at 36–38.

In response, the Commissioner argues that the Appeals Council properly found the records from Dr. Brennan did not relate to the period at issue, pointing to *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) in support.   Doc. No. 22, at 39.

The Commissioner's reliance on *Hargress* is persuasive.   In *Hargress*, the claimant submitted to the Appeals council medical records dated after the ALJ's hearing decision.   883 F.3d at 1309.   The Appeals Council stated that the records were "about a later time," than the ALJ's decision and therefore did not relate to the period of disability.   *Id.*   The Eleventh Circuit found that "[t]he Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually."   *Id.* (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)).   The Eleventh Circuit also agreed with the Appeals Council that the new medical records were not chronologically relevant.   *Id.*   The medical records consisted of progress notes dated after the ALJ's decision.   *Id.*   In addition, nothing in the new medical records indicated that the doctors had considered the claimant's past medical records or that they related to the period at issue.   *Id.* at 1309–10.   Notably, one of the doctors "checked a box that indicated that [the claimant's] limitations dated back to January 21, 2013."   *Id.* at 1310.   However, because nothing in that form indicated that the doctor had evaluated the claimant's past medical records when forming the subject opinion, and because the doctor did not treat the claimant on the date indicated in the checked-box form, the Eleventh Circuit concluded that "the form did not relate to the period on or before the date of the ALJ's hearing decision."   *Id.*

In this case, the Appeals Council addressed the new medical records that Claimant submitted from Robert Brennan, M.D. dated September 19, 2018 through September 21, 2018, and a medical

source statement from Dr. Brennan dated September 21, 2018. R. 2. The Appeals Council found that this "additional evidence does not relate to the period at issue," because the ALJ decided the matter through July 18, 2018. *Id.*

As in *Hargress*, although the form asked Dr. Brennan to "answer the following questions for the time period beginning 1/31/15 through the present date," nothing in the form from Dr. Brennan indicated that Dr. Brennan reviewed Claimant's medical records relevant to the period of alleged disability at issue. *See* R. 13–14. In addition, the record contains no treatment records from Dr. Brennan prior to the date of the ALJ's decision. Accordingly, as in *Hargress*, the undersigned agrees that the new evidence from Dr. Brennan was not chronologically relevant, and thus, the Appeals Council did not err in finding that such evidence did not relate to the period of disability at issue.

Accordingly, Claimant's second assignment of error is unpersuasive.

## VI. CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**.
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on August 10, 2020.

*[signature]*

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record